Okay, our next case is case number 24-30187, Jones v. AT&T, and we'll start with Perry Staub for Jones. May it please the Court, Perry Staub on behalf of the plaintiff, William Jones, as executor of the estate of Connie Marable. This case presents three issues, three key issues that we believe the lower court got wrong. The first is the basic production of planned documents. In the case of Amaro v. Cigna, the standard for what might have constituted a planned document was changed by the Supreme Court. The Supreme Court held that rather than the summary plan description that is a layman's document circulated to all of the employees by a planned sponsor, that the governing document really is the contractual document between the planned sponsor and the, and whatever entity is going to be managing it. That actual contractual document is what was not produced here. Secondly, the Court found that in any event, that didn't matter because prejudice needed to be shown and there was no prejudice shown here. While we disagree with the conclusion with respect to prejudice, we think that the district court erred in its discussion of both prejudice and bad faith. And lastly, the Court didn't discuss really much of anything about the interplay between collective bargaining agreements and planned documents under ERISA. All three of those issues are issues on which this Court has yet to opine. This Court has not addressed Amaro in the context of planned document requests. It has not, it has addressed the issue of prejudice and whether it's necessary to be shown in order to get penalties and it has found that that's in the discretion of the district court. It doesn't need to have a showing of prejudice. The statute doesn't say anything about prejudice. And lastly, on the interplay between collective bargaining agreements and their importance in a negotiated contract like these employees were, the Court really didn't address it all and I don't think there's very many courts in the country that have addressed that issue. So, with respect to the first issue, the court claim is simple. ERISA requires the employer to provide the applicable benefit documents within 30 days of request. AT&T didn't do so. Instead, in defense, they now contend that they produced a prior document. Keep in mind the calendar a little bit, if you will. The employee that's involved in this is a lifelong Bell South employee. She retires in 2001. She's still Bell South. In 2005, I believe it is, an entity, another one of the Bell entities, Southwestern Bell, known as SBC Communications, purchases AT&T and then flips the names of the two companies. And so AT&T becomes the parent, SBC becomes the subsidiary. That's important to know when you get to their discussion of the umbrella plans because the original plan there was for the Southwestern Bell employees. It was the SBC umbrella plan number one. The Bell South employees are running along their merry way and Ms. Marbley is retiring five years before the events in 2005 and six years before the events in 2006 where AT&T goes ahead and gobbles up Bell South as well, thereby reuniting all of the different companies. So in the meantime, as they've done this reunification, they have acquired a host of corporate entities with thousands upon thousands of employees in each one of the entities, each one of which had different plans, different benefits, and some of them were subject to collective bargaining agreements as were the Bell South representatives. So Bell South says they produced prior documents. Well, the prior documents that were more or less contemporaneous with the time of Ms. Marbley were the summary plan descriptions that was Trial Exhibit 9, ROA 6225. That's the summary plan description for Bell South Medical Assistance. That's their regular medical plan for rank and file employees. And then they produced the- So you're talking about, I'm looking at the statute, Title 29, 1024, B4, is that the relevant section? Yes. Okay, so I see a list of things that the administrator shall furnish a copy of. Which one of those things were not furnished, in your view? Well, we won't probably have time to discuss the discovery issues in the case, but they're in the brief. As the court limited the discovery, the documents that weren't provided were the real plan documents and a fact- Well, okay, so furnish a copy of the latest updated summary plan description. Was that not provided, in your view? That's what the statute says, the latest updated summary plan description. The latest summary plan description was not relevant to the case because- So they didn't violate the statute there? Right. Okay, so then it goes on to say, and the latest annual report, any terminal report, the bargaining agreement, trust agreement, contract, or other instruments under which the plan is established or operated. Which one of those was not provided? The last one, the catch-all. The catch-all, okay. Under which the plan, because as to Ms. Marbley, the only documents that were relevant were the ones that were, you know, that established her rights as of the time she retired. The collective bargaining agreement should have set her medical benefits at that time. Not the specifics of them, but the general fact that she was entitled to retirement medical benefits. Okay, so you say the statute was violated with the catch-all. Other instruments under which the plan is established or operated? Correct. Okay. I just wanted to zero in on that and hear what the other side has to say about it. So you have these two summary plan descriptions- Let me zero out a little bit. This may be a good time to ask this. So this appeal comes to us after a bench trial. And the court heard two witnesses, I guess. Mr. Jones and AT&T had a witness, I can't recall his name at this point, but the expert who knew about these documents. The court then made findings and found for AT&T against your client. What's our standard of review? I mean, are these, the court basically, as I recall it, found that the documents, the summary plan documents were the plan documents. In other words, there wasn't anything else. That's what the court found. Is that a fact finding that we review only for clear word? Clear error? What's our standard of review here? The judge, of course, as usual, is entitled to some deference in his evaluation of the credibility of witnesses. But he can't be contradicted directly by the face of the documents. I mean, the face of the documents does not comply with the statute. The statute requires that a plan document set forth the provisions by which it's amended. That's one of the hugest Achilles heels in this. They give us the document. It's not the document that's in effect at the time that they're in a . . . I thought AT&T's witness said, no, these are the documents that were in effect, and these are the only documents. They were the only documents he had. Remember, he's an employee of what was Southwestern Bell, if he went back that far, and then AT&T. He didn't have anything to do with Bell South. He doesn't have any knowledge about those. All he knows is he got a cadre of documents from Bell South when the company was acquired, and that's the position he's in. Disadvantaged, yes, but the case is about the obligation for a company like AT&T to make sure that it can respect all of the benefit rights of all of the different employees of all the various companies, and it needs to exercise care in doing that. Does that answer your question? Well, I mean, I'm still struggling because I thought what the witness said, AT&T's witness said, these are the documents. The SPDs were the planned documents. There was no extended document to produce. In other words, they produced not only just what they had in their files, but they produced the documents that were responsive, and the district court agreed. The district court agreed with that. That was error. Mr. Spiegel not only didn't have the background for it, but he was identifying as documents that were saying they were the planned document. If you read carefully on cross, he does concede that, well, yes, this was summary plan description, and it identifies the plan number, which was a Department of Labor requirement that they be numbered, and so the Bell South employee assistance plan was plan 522, and the plan for the retirees was plan 528. Neither one of those plans were ever produced, and so the face of the record directly contradicts the judge's finding in that regard. Well, they weren't produced because they didn't exist. They existed at one time, and that's what he says. He assumes they existed at one time. I thought he said that the SPDs were also enforced as the planned documents at the relevant time. So after Amara, AT&T comes in, and they do a plan amendment. No telling whether the plan amendment is in compliance with all of the amendment procedures of the various plans because nobody has them, but they do a plan amendment that says, okay, now we're going to flip things on their head, and we're going to make the summary plan document the, we're going to make the summary plan description the planned document. They did that. I think that's exhibit one, trial exhibit 125, but the problem with that exhibit, even if you accepted that they could do that, which is questionable in light of the amendment provisions not being there, the Achilles heel there is they do that in late 2013, retroactive to mid-2013, and all of the events where Ms. Marbley has her accident in 2012, and the intense cost of her treatment occurs in 2012 and early 2013. So they're talking about some steps they took in response to Amara that they would have to apply retroactively in order to use that subrogation and reimbursement provision to go after. I think the point is that, you know, I understand the problems Mr. Spiegel faced with all of these different companies and stuff, but for God's sake, if you don't have the plan document, and you know you don't have the plan document, don't try to use it as a sword against your employees, I mean, that's the big Achilles heel here, and so. What is the plaintiff's prejudice for not getting the full plan documents versus the summary plan documents? Assume you're right that there were full plan documents out there that AT&T did not produce. Well, so position A, of course, is that prejudice isn't required under the ERISA statute, and that's a position that's been recognized by this Court, but the inquiry is still relevant because the Court always has discretion to determine the extent of penalties that it might impose. Yeah, the district court didn't have to award penalties, even if it found for the plaintiff on every particular. It did not have to. So how are we to review that decision not to award penalties? Under what standard do we review that decision? The statute seems to say it's within the discretion of the district court. The awarding of penalties under the statute is within the discretion of the district court. Okay, so how are we . . . so what is your argument that . . . I guess that's abuse of  I would assume it's also abuse of discretion. I don't have a case off the top of my head. Okay, so tell me why it was an abuse of discretion not to award penalties. It was an abuse of discretion because the judge is using the wrong standard in measuring whether or not penalties should be applied. That's an inquiry that's wholly different than just prejudice. But to answer the first question about what prejudice occurred, well, he, Mr. Jones, is then forced to sit through a year or so of defending a trial against AT&T with all the attendant cost and attorney's fees and everything. I mean, that's pretty extreme prejudice. The other thing that happened was that, you know, he would have subverted that had he known about the collective bargaining agreement, and he so testified that he would have taken it the collective bargaining route. And why wouldn't you? The collective bargaining dispute resolution panel, it consists of half employer representatives and half employee representatives. You can get a quick fair shot and you're done, and you don't have to engage in litigation. No excuse, you know, no defense to all of us lawyers, but, you know, I'm sure he wanted to avoid that, and had he come to me with that, I would have told him, you know, let's avoid it. Go over there and do the collective bargaining. Well, I mean, your client originally settled and then filed this lawsuit. Well, so that gets to the point about the expense and time and effort. So here he is. He doesn't have the plan documents. He doesn't know what, if somebody actually does come up with the plan documents, they may say what AT&T is saying, and he may have had that right. But he finally just said, uncle, and threw in the towel and paid him a bunch of money to settle the first round case. Is that? Well, that's your answer. So, and the statute is intended to be, and all the case law will say the statute is intended to be a penalty statute. It is not intended to be one where damages are necessary to establish. But, you know, that was another area, and this kind of begins to get into the discovery problems in the case, that had he been allowed, even limited to the purpose of establishing how he was prejudiced, had he been allowed to go after the things that we saw in discovery, you would have seen, for example, that there was this colossal death benefit plan that it would have fallen to the succession to pursue that they never knew anything about. There's a year's worth of payments. But we tried to proffer it. I mean, it was objected to and kept out of the case. But we weren't allowed to pursue any discovery whatsoever with respect to any of those documents. Only the medical stuff. Now, I wanted to comment real quickly before I run out of time about the Court's conclusions about bad faith. You know, based, I guess, largely on Mr. Spiegel's testimony that, you know, he went through our letter, he produced this and this and this and this, everything he could get his hands on, well, that itself shows part of the discovery issue because we hadn't been allowed to conduct any discovery into that. But dumping 12,000 mostly meaningless pages on somebody who's made a planned document without identifying the ones that really are the governing documents, when you're a fiduciary toward the person making the request, that's hardly a demonstration of good faith. If you add in the fact that some cases in ERISA will go so far as to say that the fiduciary should assist in trying to locate the proper planned document rather than just sitting back and saying, as Spiegel did, we don't have to give you a road map. Okay, you've saved a little time for rebuttal. We'll now hear from Kim Boyle for AT&T. Good morning, Your Honors. May it please the Court, Kim Boyle and Carlene Green on behalf of Applebee's AT&T Inc. and AT&T Services Inc., and we respectfully request that this Court affirm in its entirety the March 31st, 2023, findings of fact and conclusions of law as well as the judgment by the District Court related to a very narrow and discreet issue that is before the Court. Notwithstanding the fact that the appellant put forth in their appeal brief 14 assignments of error, this was a very, very discreet issue related to Section 1024B4, Your Honor, as well as whether or not the District Court abused its discretion in not awarding statutory penalties under Section 1132C. And as it relates to the Court's interpretation of the District Court's discretion here, it is important to note that because, as Mr. Staub said, this is a penalty provision, it is strictly construed. So first, we start off with the fact, Judge Wilson, to get to your point as it relates to the relevant standard of review. The relevant standard of review is plaintiff or appellant has not come close to showing that the District Court's findings of fact were in any way clearly erroneous in violation of Rule 52 of the Federal Rules of Civil Procedure. The appellant has a strict burden. Under the Supreme Court's decision in Anderson v. Bessemer City, appellant must show clear error, which is especially strong where the findings are primarily based upon oral testimony and the District Judge has viewed the demeanor and judged the credibility of the witnesses. In this one-day bench trial, plaintiff called two witnesses. Plaintiff did not issue an opening statement, called two witnesses in their case-in-chief. Numerous documents relating to, actually, all of the documents, let me be clear, that AT&T produced and in its role as the plan administrator were admitted into evidence and, in fact, yes, Your Honor? Clear this up, if you could. So Mr. Siegel comes in for AT&T. I thought he said the summary plan documents were the plan documents. In other words, there weren't two. This wasn't just an SPD that summarized the full plan, but I heard counsel opposite to say, no, he said that they produced what they had and all they had was the SPDs and that timing also wasn't applicable in terms of the decedent's claims. In other words, were there documents that just didn't exist anymore, so AT&T still had an obligation to produce them, or did AT&T actually produce the documents that there were? AT&T produced the documents that it was legally required to produce pursuant to Section 1024 B.4, Your Honor. Specifically, what Mr. Siegel stated was consistent with Exhibit 2, which was introduced into the record without any objections whatsoever. That is the September 19, 2019 response by AT&T when it produced the 12,000 pages of  On page 2 of Exhibit 2, and this is consistent with Mr. Siegel's oral testimony at trial, it specifically states, one, for the medical plan documents as of the dates of service range and date of death, the SPDs, the summary plan descriptions, are incorporated into the umbrella benefit plan document. As such, they are integral components of the plan and not mere summaries of it. So Mr. Siegel's testimony was very clear that, and I'm not going to bore the Court with all of the mergers and corporate reorganizations that took place, but notwithstanding that, South Central Bell, where Ms. Marable worked, no longer existed. After a number of mergers, corporate reorganizations, et cetera, the relevant plan documents are AT&T umbrella benefit plan. Mr. Siegel made very clear in his testimony at trial and consistent with Exhibit 2, which is unrefuted, that what constitutes the plan under the AT&T umbrella benefit plan are, one, the summary plan descriptions, as well as the overall wrapped document of the umbrella plan, and his testimony was consistent with that. As it relates to these issues of when, what, whatever was produced, it's important for the Court to kind of look at the actual time period that we're talking about here. Mr. Staub, I believe, just stated to the Court that had the plaintiff had this, had the plaintiff had that, they would not have had to go through the other litigation, the reimbursement litigation that AT&T initiated against Mr. Jones. However, it is important for the Court to understand that litigation was already in place when Mr. Jones made his information request under Section 1024b-4. Specifically, if we look at Exhibit 1, which again was admitted into evidence without any objections, that is the actual information request made by Mr. Jones dated July 24, 2019. The rate to that information request is AT&T Inc. v. William Collins Jones' request for bland documents. So Mr. Jones was already in litigation with AT&T for the reimbursement issues at the time he issued the information request to AT&T. And as it relates to the documents that Mr. Jones was actually seeking in that information request pursuant to Section 1024b-4, I point the Court's attention to page 2 of that information request, and this relates to the discovery issue, which hopefully we'll get to. Please forward all documents pertaining to health benefit rights of Connie Marable during the aforementioned periods, health benefit payments made by AT&T to Connie Marable, and the alleged right to reimbursement. That is exactly what Mr. Jones requested, and if the Court reviews what's listed as Exhibit 2, as well as Mr. Siegel's actual testimony at trial, the Court will see during my direct examination of Mr. Siegel, I walked Mr. Siegel through all 18 categories that are listed in the plaintiff's information request, and he responded on record as to what AT&T produced in response to each and every one of those 18 categories. He made it abundantly clear that Plan 522, 528, those were not the plans anymore. To get back to your point, Your Honor, related to the actual language of the statute, it says, latest summary plan documents. That also ties in with the district court's ruling in the Terrio case, which we cite in our appellee brief. That was a decision by Judge Lance Afric of the Eastern District Court, in which my esteemed opponent, Mr. Staub, actually represented the plaintiff in that case. What Judge Afric said in that decision, I don't believe it went up to the Fifth Circuit, but what Judge Afric specifically stated in that decision is, under Section 1024 of ERISA, there is no obligation for the plan administrator to produce outdated and historical documents when the language of the statute says exactly what it says. So what Judge Guidry found specifically is that AT&T complied with the requirements of Section 1024, such that, one, we don't even reach the issue as to whether or not Mr. Jones is even entitled to receive statutory penalties. But notwithstanding that we don't reach that issue because, again, the appellant has not shown that the findings of fact and conclusions of law were clearly erroneous in any sense. Getting back to your question, Judge Duncan, related to 1132C, which is the statutory penalties, it makes abundantly clear that the district court has discretion in making that determination. Now the Fifth Circuit jurisprudence concerning how to interpret Section 1132, the Fifth Circuit has made clear in Fisher, as well as in Randolph, as well as in Hager, as well as in Goodwin, that there is limited guidance. However, based on the fact that the statute specifically refers to discretion, the Fifth whether or not the planned administrator acted in bad faith. The district court, in its discretion, may look at whether or not the plaintiff who was seeking the documents suffered any damages. The district court may look, in its discretion, as to whether or not there was intentional conduct by the administrator in not producing the documents. And in fact, as recently as 2021, in the Randolph versus East Baton Rouge parish case, and I will quote this court directly, it specifically says, district courts have considered a number of factors in the decision to award or withhold statutory penalties, including prejudice to the plaintiff, the availability of other remedies, bad faith or intentional conduct by the administrator and the length of the delay. So we have a situation where plaintiff or appellant still has not shown the court where any of the district court's findings were clearly erroneous, as he was required to do under the Anderson decision and under Rule 52 of the Federal Rules of Civil Procedure. But notwithstanding that, because the district court had broad discretion in making a as to whether or not statutory penalties could or should be awarded, they have certainly not shown that Judge Guidry in any way abused the discretion. First of all, in looking at the factors that the district court may consider in its discretion is the issue of bad faith. In this particular case, Your Honors, plaintiff, Mr. Jones, never even alleged bad faith. So there's no allegation in the complaint of bad faith whatsoever. Based on the fact that there was no allegation of bad faith, there certainly has been no demonstration of bad faith. And in fact, Judge Guidry said there was no bad faith. As it relates to this alleged prejudice to Mr. Jones, again, I go back to my initial point related to the timing. The reimbursement suit filed by AT&T was already ongoing litigation. It's already referenced in the subject matter of the information request in and of itself. But to go back to Mr. Staub's point, talking about some ability to utilize or invoke the provisions of a grievance procedure in a collective bargaining agreement, Your Honors, let's focus on who the actual litigant to this lawsuit is. The litigant to the lawsuit was not the South Central Bell employee, Ms. Connie Marable, Mr. Jones' mother, who was a member of the bargaining unit. The litigant in the lawsuit is Mr. Jones. He didn't have the right to grieve anything. He was not a member of the South Central Bell union as part of that collective bargaining agreement. So what Judge Guidry actually found, and this is in the findings in fact and conclusions of law, and I point the court to finding of fact number 20, plaintiff testified that he had been prejudiced by not receiving the 1998 agreement because he could have taken advantage of the grievance process to resolve his dispute with defendants had he known about them. Plaintiff admitted, however, that he had received a copy of the 1995 version of the agreement and that the 1995 version contained an identical grievance process. So I know that in this court's review of the record transcript from that one day, September 12, 2022 trial, the court will have seen that when I went through my cross-examination with Mr. Jones, I literally put the relevant provisions of the 1995 collective bargaining agreement on the screen next to the relevant provisions of the 1998 collective bargaining agreement. There was no difference. So that ties into and actually supports Judge Guidry's conclusion that there was no prejudice because this alleged grievance procedure to which Mr. Jones could not have availed himself anyway was identical under the one that was initially produced as well as the 1998 one that he complains about. So again, there has been absolutely no finding that Judge Guidry in any way abused any discretion and as we know, that is a very heightened burden for the appellant to be able to reach. Now we get to the issues in which the appellant talks about the discovery rulings of the magistrate judge as well as of Judge Guidry. We know that under Fifth Circuit, relevant Fifth Circuit jurisprudence, in order for this court to review discovery rulings, appellant has to show that such rulings were arbitrary and clearly unreasonable. That is the legal standard in the Fifth Circuit Court of Appeal, arbitrary and clearly unreasonable and further, that appellant was somehow prejudiced by the arbitrary and clearly unreasonable discovery ruling. For every discovery ruling that took place in this case, the magistrate judge, first of all, allowed appellant to present in writing any and all arguments. The magistrate judge made very reasoned conclusions related to the discovery rulings and then for each and every one of the discovery rulings, appellant actually appealed it to the district court judge who then again made a detailed reasoned ruling. Plaintiff or appellant has been unable to show where any of the discovery rulings that are in play or at issue in this lawsuit were somehow arbitrary, that were somehow unreasonable or that plaintiff was prejudiced. Plaintiff was not prejudiced because as the court is aware, under federal rules of civil procedure, we are now dealing with proportionality as it relates to what discovery any party to any piece of litigation is actually entitled to. And what the magistrate judge determined and what Judge Guidry determined upon reviewing the magistrate judge's rulings is that the discovery that the plaintiff was seeking was completely overbroad, completely non-proportionable, but more importantly was not directly relevant to the narrow and discreet issue in this case, which was whether or not AT&T complied with its statutory obligations under section 1124B-4 of ERISA. And then we get to the appellant's argument relating to whether or not not being granted leave to amend was somehow clearly erroneous. And we know that under, again, the very heightened standard related to leave to amend once there has been a violation of a court's scheduling order is a high standard requiring that the appellant must show good cause. When the plaintiff first sought to amend the complaint, it was one, Your Honors, 15 months after the lawsuit had already been filed. It was nine months, so almost a year, after all deadlines for amendments had passed, and then it was three months after AT&T had filed motion for summary judgment, which means that appellant could not invoke the more liberal standard for amendment under Rule 15 under the Federal Rules of Civil Procedure, but instead had to show the court good cause under Rule 16 because the appellant was already in violation of the scheduling order. Based on the fact that AT&T had a pending motion for summary judgment, and let me be clear, Your Honor, we mentioned this in the brief, but it is very, this is important, appellant did not even raise the issue of meeting the standard of good cause under Rule 16 until his reply brief. When he first filed a motion for leave to amend, it was done under Rule 15 and not under Rule 16 requiring good cause. So notwithstanding the fact that the magistrate judge could have basically rejected it out of hand, she still chose to look at the good cause standard, which we know under Fifth Circuit jurisprudence is a four-pronged test, and she made a determination that he did not and could not meet that standard, not least of which based upon the clear prejudice to AT&T, which had a pending motion for summary judgment at that particular time. So I see that my time is almost up, Your Honor. We believe that under the rigorous standard of clearly erroneous with Rule 52, under the Supreme Court's very clear language as to what an appellant must show to show clearly erroneous when you're talking about findings of fact and conclusions of law in a bench trial where the district court judge had the ability to look at the demeanor and weigh the credibility of the two witnesses that testified, that appellant has come nowhere close to meeting the standard of clearly erroneous, and we respectfully request that this court affirm the district court's March 31, 2023 judgment in all relevant respects and dismiss this case with prejudice. Thank you, Your Honors. Okay. Thank you. We'll now hear the rebuttal. Just a couple of quick points. With respect to the decision by Judge Afric that was discussed, this court reversed that decision, not on the issue of planned document production. So not directly relevant, but the decision was overturned. The umbrella benefit plan number one, the question with umbrella benefit plan number one is how do you get there? Okay. You have to get there by following the amendment procedure under the Bell-South plans. Who knows? We don't have the plan. What's the amendment procedure? You can look at the document that is described as the plan, that Spiegel says is the plan. There's no amendment procedure contained in it. That is one of the clearly differentiating factors between a summary plan description and a plan. The discrepancies between the two documents are very important. This court emphasized that, and that's why it's one other possible area for prejudice. In the case of Manual v. Turner Industries, where this court overturned a ruling based upon documents that had been produced where there were obvious omissions and differences in the pages between the plan document and the summary plan description. We can't get there. With respect to the discovery, oh, and there was kind of a suggestion maybe that Mr. Jones wasn't the right person to be in a position to be asserting. He's a derivative beneficiary under ARESA. He has the full and same rights as Ms. Marable did, and he was the person entitled to enforce those rights. So the discovery is, just to be facetious but not really, all factual, because we know we're in a court that likes to move very, very fast, and so it's all factual. Okay, you give us the plan, all documents, every single request, and they're all in the record because they were all appealed, is objected to on proportionality grounds. Now, so now we're in the position in both depositions and in written discovery of not being able to ask what is the correct plan document that was used. Instead, we have the burden of showing that this 12,000 pages is somehow not the plan document. We should have been allowed that discovery. Third parties conduct all of those reimbursement and subrogation decisions. They make them by computer when the claims come up. They go out. We wanted to depose one of those people that was responsible so they could identify the plan they used, and we would have the language by getting it in that fashion. No, objected to, not going to happen. My time is up. Thank you very much. All right. Thank you both. We appreciate y'all's arguments. The case is now under submission, and we have concluded today's oral arguments. We will be back tomorrow at 9 a.m.